In the Matter of the GUARDIANSHIP OF Dorothy C. HOLLENGA

Daniel J. Cook, Appellant,

v.

Gene Harris, Greg Stewart, Janet Becker, Elizabeth Chavez, Carol Griffin, and Robert Laszynski, Appellees.

Dorothy C. Hollenga, Appellant,

v.

Gene Harris, Greg Stewart, Janet Becker, Elizabeth Chavez, Carol Griffin, and Robert Laszynski, Appellees.

Nos. 79A02–0512–CV–1175, 79A02–0512–CV–1176.

Court of Appeals of Indiana.

Aug. 17, 2006.

Laura L. Bowker, Lafayette, IN, Attorney for Daniel J. Cook.

Jason W. Bennett, James A. Gothard, Bennett Boehning & Clary, Lafayette, IN, Attorney for Dorothy C. Hollenga.

Stan Miller, Jeffery M. Newell, Broden & Miller, Lafayette, IN, Attorney for Gene Harris, Greg Stewart, and Janet Becker.

Ladona E. Knight, Law Office of Earl McCoy Lafayette, IN, Attorney for Elizabeth Chavez and Carol Griffin.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Respondent Dorothy C. Hollenga ("Hollenga") and Appellant–Intervenor Daniel J. Cook ("Cook") appeal the trial court's orders granting Gene Stephen Harris ("Harris"), Greg Stewart ("Stewart"), and Janet Becker's ("Becker") (collectively "the Estate Guardians") petition to set aside Hollenga's power of attorney naming Cook as her attorney in fact.[1] Hollenga also appeals the trial court's or-

1. This matter comes before this Court on two separate appeals—one filed by Hollenga un-

der cause number 79A02–0512–CV–1176 and

der authorizing the Estate Guardians to sell some of her real estate. We reverse and remand.

## Issue

Hollenga and Cook frame the issue on appeal as whether the trial court erred by revoking Hollenga's durable power of attorney naming Cook as her attorney in fact;[2] however, we conclude that the relevant issue is whether the trial court abused it discretion by naming the Estate Guardians as the guardians over Hollenga's estate, instead of Cook, who was Hollenga's nominated guardian in her power of attorney, when the trial court had already issued an order denying the Estate Guardians' petition to set aside Hollenga's power of attorney.

## Facts and Procedural History

### I. Background

Hollenga, who was born on January 28, 1920, is a reclusive, childless widow with an estate totaling approximately $900,000.00. Cook is a disabled former LPN. In 1998, Cook began living in a rental property, which was owned by Hollenga and located across the street from Hollenga's house. Cook helped Hollenga by mowing her yard, remodeling and maintaining her properties, and staying with her when she was sick and had requested him to come.

In late 2002, Cook helped Hollenga discover that she was being taken advantage of by her financial advisor, whom Hollenga had named her attorney in fact via the execution of a power of attorney, and Hollenga credited Cook with saving her from further financial loss.[3] Hollenga lost approximately $70,000.00 as a result of her former financial advisor's actions. In December 2002 and May 2003, Hollenga recovered some of her funds that the financial advisor had transferred and purchased three annuities, all of which named Cook as her beneficiary. In January 2004, Hollenga purchased a fourth annuity and named Cook as a beneficiary.

On August 5, 2003, Hollenga's neighbor, Harris, and two of his friends from his church, Stewart and Becker, (collectively, "the Estate Guardians"), filed a petition for appointment of a guardianship over Hollenga's estate. That same day, the trial court appointed Robert S. Laszynski as the guardian ad litem ("the GAL").

On October 2, 2003, Hollenga, who was opposed to the guardianship petition, executed a durable power of attorney naming Cook as her attorney in fact and becoming effective "upon the determination by [her] treating physician that [she is] incompetent or incapacitated to such an extent as to affect [her] ability to govern [her] affairs[.]" Hollenga's App. at 51.[4] Attorney

---

another filed by Cook under cause number 79A02–0512–CV–1175—from the same guardianship proceeding. Because Hollenga and Cook both challenge a trial court order revoking Hollenga's power of attorney, we will consolidate and address Hollenga's and Cook's arguments in this opinion.

2. Hollenga argues that the trial court erred by revoking Hollenga's power of attorney naming Cook as her attorney in fact because: (1) res judicata, specifically claim preclusion, barred the relitigation of Hollenga's competency to execute the power of attorney; and (2) notice challenging Cook's power as attorney in fact was not served on Cook as re-

quired by Indiana Code Section 30–5–3–4(b). Cook argues that the trial court erred by revoking the power of attorney because he did not receive notice challenging his power as attorney in fact as required by Indiana Code Section 30–5–3–4(b).

3. Hollenga subsequently filed a lawsuit against her financial advisor.

4. Because Hollenga and Cook both filed an Appellant's Appendix, we will refer to the appendices as either "Hollenga's App." or "Cook's App." We further note that Cook did not paginate his appendix and, thus, direct his attention to Indiana Appellate Rule 51(C),

Edward Kennedy ("Kennedy"), who prepared the power of attorney for Hollenga, explained each paragraph of the power of attorney and discussed reasons why she wanted Cook to be her attorney in fact. Kennedy testified that he believed that Hollenga was competent to sign the document. On October 13, 2003, Hollenga went back to Kennedy's office and executed a living will and a will, which left everything to Cook.

On October 23, 2003, the GAL interviewed Hollenga and filed a report with the trial court on November 7, 2003.[5] On November 12, 2003, the Estate Guardians filed a petition to set aside Hollenga's power of attorney ("First Petition to Set Aside Power of Attorney"). In the petition, the Estate Guardians alleged that the GAL's report "substantiated the position" that Hollenga was "not capable of making sound financial decisions" and, further, that "it would be in the best interest of [Hollenga] to set aside the Power of Attorney until a final determination is made by the Court with regard to [Hollenga's] competence." Hollenga's App. at 30.

On December 9, 2003, the trial court held a hearing on the Estate Guardians' First Petition to Set Aside Power of Attorney. The trial court then issued an order denying the Estate Guardians' First Petition to Set Aside Power of Attorney.

Thereafter, the Estate Guardians petitioned the trial court to appoint a temporary guardian over Hollenga's estate, and the trial court held a hearing on the petition on December 16, 2003. The trial court, upon finding that there was "no evidence that there is any likelihood of abuse" and "no evidence that there is in fact an emergency[,]" denied the Estate Guardians' petition for a temporary guardianship.[6] Tr. Vol. I at 68.

In February 2004, the trial court held a hearing on the Estate Guardians' original petition for the appointment of a guardianship over Hollenga's estate. On March 1, 2004, the trial court issued an order finding that Hollenga was "incapable of handling her property because of confusion about her financial affairs, her inability to manage, protect, and care for her property, and her susceptibility to undue influence." Hollenga's App. at 37. Thus, the trial court granted the petition for guardianship and appointed the Estate Guardians as co-guardians over Hollenga's estate ("Order Establishing the Estate Guardianship"). The trial court did not make any findings that good cause had been shown or that Cook was disqualified from serving as Hollenga's guardian.

Following the establishment of the guardianship over Hollenga's estate, Hollenga's niece, Carol Griffin, and great-niece, Elizabeth Chavez, (collectively, "the Nieces") filed a petition for guardianship over Hollenga's person. Hollenga also filed for a change of judge, which the trial court granted and, thereafter, appointed Cynthia Garwood as special judge.

On May 23, 2005, Hollenga fell at her home and was hospitalized. On May 26, 2005, Hollenga's doctor determined that she was incapacitated; thus, her power of attorney became effective. On June 15,

---

which provides that "[a]ll pages of the Appendix shall be numbered at the bottom consecutively, without obscuring the Transcript page numbers, regardless of the number of volumes the Appendix requires."

**5.** A copy of the GAL's report is not included in the parties' appendices.

**6.** A trial court may appoint a temporary guardian for an incapacitated person if: "(1) a guardian has not been appointed for an incapacitated person or minor; (2) an emergency exists; (3) the welfare of the incapacitated person or minor requires immediate action; and (4) no other person appears to have authority to act in the circumstances[.]" Ind. Code § 29–3–3–4(a).

2005, the Estate Guardians filed another petition to set aside Hollenga's power of attorney ("Second Petition to Set Aside Power of Attorney"), alleging that she was incompetent and under undue influence at the time she executed it.

On July 8, 2005, the trial court held a status conference, during which the Estate Guardians and the GAL expressed their concern that Cook as the attorney in fact "could make off with ten, fifteen, [or] twenty thousand dollars" of Hollenga's money and asked the trial court to take action on their Second Petition to Set Aside Power of Attorney. The trial court ruled that it was going to enter an "injunction type order" or temporary order "trumping the code" that would specifically preclude the Estate Guardians from making any disbursements to Cook until the court held a hearing on the matter ("Bench Ruling Disregarding Power of Attorney"). Tr. Vol. IV at 8. Thereafter, the trial court issued an order ("Order Disregarding Power of Attorney"), which provided that the Estate Guardians "are to disregard a certain Durable Power of Attorney executed by [Hollenga] on October 2, 2003 appointing Daniel J. Cook as [Hollenga's] Attorney of Fact until further Order of the Court." Hollenga's App. at 54.

Hollenga then filed a motion to reconsider the trial court's Bench Ruling Disregarding Power of Attorney. During the hearing on Hollenga's motion, Hollenga objected to the fact that Cook had not been given notice of the Estate Guardians' attempts to set aside Hollenga's power of attorney. The Estate Guardians responded that Cook was "not a party and [they] made no effort to provide him notice." Tr. Vol. IV at 25. Thereafter, the trial court issued an order denying Hollenga's motion ("Order Revoking Hollenga's Power of Attorney"). Specifically, the trial court's order provided, in part:

1. Dorothy C. Hollenga was not legally competent to create a contractual agency relationship at the time the durable power of attorney was prepared and executed that purported to name Daniel J. Cook as her attorney in fact in the event of her incapacity. Therefore, the power of attorney was never valid.

2. Because no valid power of attorney exists, there is no statutory requirement that notice of these proceedings [be given] to Daniel J. Cook, and there is no need to revoke the power of attorney.

Hollenga's App. at 18. The trial court also issued an order authorizing the Estate Guardians to sell some of Hollenga's real estate ("Order to Sell Real Estate"). Hollenga now appeals the trial court's Order Revoking Hollenga's Power of Attorney and Order to Sell Real Estate.

Following the trial court's issuance of its Order Revoking Hollenga's Power of Attorney and Order to Sell Real Estate, Cook filed a motion to intervene. The trial court apparently did not rule on Cook's motion to intervene but, on October 31, 2005, issued findings of fact and conclusions of law in which it, among other things, again granted the Estate Guardians' Second Petition to Set Aside Power of Attorney; authorized the Estate Guardians to change the beneficiary on four annuities from Cook's name to Hollenga's estate; found that Cook was not fit to serve as guardian over Hollenga's person; and appointed the Nieces as guardians over Hollenga's person. Cook now appeals that order.

### Discussion and Decision

#### I.  Standard of Review

All findings and orders of the trial court in guardianship proceedings are within its discretion. *In re Guardianship of V.S.D.*, 660 N.E.2d 1064, 1066 (Ind.Ct. App.1996) (citing Ind.Code § 29–3–2–4(a)).

Thus, we will review those findings under an abuse of discretion standard. *Id.* We will find an abuse of discretion only when the decision of the trial court is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The instant appeal involves statutory interpretation, which is a question of law. We review questions of law under a de novo standard, and we owe no deference to the legal conclusions of the trial court. *Brown v. Guardianship of Brown,* 775 N.E.2d 1164, 1166 (Ind.Ct.App.2002).

## II. Analysis

■ The issue is whether the trial court abused it discretion by naming the Estate Guardians as the guardians over Hollenga's estate, instead of Cook, who was Hollenga's nominated guardian in her power of attorney, when the trial court had already issued an order denying the Estate Guardians' petition to set aside Hollenga's power of attorney.

In this appeal, the parties' arguments focus on the trial court's orders revoking Hollenga's power of attorney and whether Cook was entitled to notice of any challenge to Hollenga's power of attorney. However, prior to the time the trial court issued those orders revoking Hollenga's power of attorney, it had already denied the Estate Guardians' First Petition to Set

Aside Power of Attorney[7] and subsequently issued its Order Establishing the Estate Guardianship in which it established the guardianship over Hollenga's estate and named the Estate Guardians as co-guardians over the estate. Because the trial court's actions—naming the Estate Guardians as co-guardians over the estate and failing to name Cook as guardian when a durable power of attorney existed naming Cook as Hollenga's nomination for guardian—were contrary to Indiana Code Section 30–5–3–4, we address the trial court's Order Establishing the Estate Guardianship.

In a guardianship proceeding, the appointment of a guardian is guided by statute. Specifically, Indiana Code Section 29–3–5–3 provides that the trial court "shall appoint a guardian" if the trial court finds that: "(1) the individual for whom the guardian is sought is an incapacitated person or a minor; and (2) the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor[.]" The trial court's discretion in appointing a guardian, however, is somewhat limited by Indiana Code Section 29–3–5–4 and Indiana Code Section 29–3–5–5. Indiana Code Section 29–3–5–5 sets forth the order of people that are entitled to consideration

---

**7.** The parties argue about whether the trial court's order denying the Estate Guardians' First Petition to Set Aside Power of Attorney was a determination of whether Hollenga was competent at the time she executed the power of attorney. Specifically, Hollenga argues that the Estate Guardians petitioned the trial court to set aside her power of attorney based upon her incompetence or undue influence at the time she executed the power of attorney and that the trial court's denial of the Estate Guardians' petition was an adjudication of the merits of her competency to execute the power of attorney. The Estate Guardians

contend that their petition to set aside the power of attorney did not allege that Hollenga was incompetent and that the trial court did not rule that Hollenga was competent. The arguments are essentially of no moment because the fact remains that Hollenga's durable power of attorney naming Cook as her attorney in fact had not been set aside and was in existence at the time the trial court issued its order establishing the guardianship over Hollenga's estate and appointing the Estate Guardians as co-guardians over the estate.

as guardian and lists "[a] person designated in a durable power of attorney" as the first person to be considered when appointing a guardian.[8] Indiana Code Section 29–3–5–4 provides, in part, that "[t]he court shall appoint as guardian a qualified person or persons most suitable and willing to serve, having due regard to ... [a]ny request made by a person alleged to be an incapacitated person, *including designations in a durable power of attorney under IC 30–5–3–4(a)."*[9] (emphasis added). Indiana Code Section 30–5–3–4 provides, "A principal may nominate a guardian for consideration by the court if protective proceedings for the principal's person or estate are commenced. The court *shall* make an appointment in accordance with the principal's most recent nomination in a power of attorney except for good cause or disqualification." Ind.Code § 30–5–3–4(a) (emphasis added). Thus, pursuant to these statutes, a person designated in a durable power of attorney is entitled to primary consideration as the person to be appointed as guardian and *shall* be appointed guardian unless good cause or disqualification is shown.

Here, after the Estate Guardians filed their petition for appointment of a guardianship over Hollenga's estate and prior to the establishment of the guardianship, Hollenga executed a power of attorney, which named Cook as her attorney in fact. At the time the trial court granted the petition to establish an estate guardianship, Hollenga's power of attorney was in existence and had not been revoked. Therefore, pursuant to Indiana Code Section 30–5–3–4(a), the trial court, upon establishing the guardianship over Hollenga's estate, was required to appoint Cook, who was Hollenga's most recent nomination in a power of attorney, as Hollenga's guardian, unless there was a showing of

8. Indiana Code Section 29–3–5–5 provides:

   (a) The following are entitled to consideration for appointment as a guardian under section 4 of this chapter *in the order listed:*
   (1) A person designated in a durable power of attorney.
   (2) The spouse of an incapacitated person.
   (3) An adult child of an incapacitated person.
   (4) A parent of an incapacitated person, or a person nominated by will of a deceased parent of an incapacitated person or by any writing signed by a parent of an incapacitated person and attested to by at least two (2) witnesses.
   (5) Any person related to an incapacitated person by blood or marriage with whom the incapacitated person has resided for more than six (6) months before the filing of the petition.
   (6) A person nominated by the incapacitated person who is caring for or paying for the care of the incapacitated person.
   (b) With respect to persons having equal priority, the court shall select the person it considers best qualified to serve as guardian. The court, acting in the best interest of the incapacitated person or minor, may pass over a person having priority and appoint a person having a lower priority or no priority under this section.
   (emphasis added).

9. Indiana Code Section 29–3–5–4 provides:

   The court shall appoint as guardian a qualified person or persons most suitable and willing to serve, having due regard to the following:
   (1) Any request made by a person alleged to be an incapacitated person, *including designations in a durable power of attorney under IC 30–5–3–4(a).*
   (2) Any request contained in a will or other written instrument.
   (3) Any request made by a minor who is at least fourteen (14) years of age.
   (4) Any request made by the spouse of the alleged incapacitated person.
   (5) The relationship of the proposed guardian to the individual for whom guardianship is sought.
   (6) Any person acting for the incapacitated person under a durable power of attorney.
   (7) The best interest of the incapacitated person or minor and the property of the incapacitated person or minor.
   (emphasis added).

"good cause or disqualification." The trial court, however, appointed the Estate Guardians as co-guardians and did not make a finding that good cause had been shown or that Cook was disqualified. Because the trial court's actions were contrary to statute, we reverse the trial court's Order Establishing the Estate Guardianship. *See* Ind.Code § 30–5–3–4(a); *see also* Ind.Code §§ 29–3–5–4; 29–3–5–5.

Therefore, we remand with instructions to: (1) have the Estate Guardians file an accounting and inventory for Hollenga's estate; (2) remove the Estate Guardians as guardians over Hollenga's estate; and (3) appoint Cook as guardian over Hollenga's estate and person unless within thirty days there is a challenge as to "good cause or disqualification" of Cook pursuant to Indiana Code Section 30–5–3–4(a) and a subsequent determination of such by the trial court. We note that if a challenge to Cook's qualifications to serve as guardian is forthcoming, then the trial court should make that determination by conducting a hearing that complies with due process by providing notice and an opportunity to be heard to Cook to defend his power as attorney in fact. *See In re Guardianship of Shaffer,* 711 N.E.2d 37, 41 (Ind.Ct.App. 1999) (noting that "the Power of Attorney statute authorizes [an attorney in fact] to defend [his] power"), *trans. denied.*[10]

### Conclusion

For the foregoing reasons, we reverse the trial court's order appointing the Estate Guardians as the co-guardians over Hollenga's estate and remand to the trial court with instructions as described above.

Reversed and remanded.

KIRSCH, C.J., and CRONE, J., concur.

---

10. We further note that, if Cook is ultimately appointed guardian, the trial court, in its discretion, may make such appointment under a supervised or monitored guardianship. *See* Ind.Code §§ 29–3–2–4(a) (providing that "[a]ll findings, orders, or other proceedings under [the guardianship statute] shall be in the discretion of the court unless otherwise provided in this article"); 29–3–8–8 (explaining the limitations that a trial court may place on a guardian's powers).